UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAID MOHAMMAD TANAI,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

Case No. C26-3152-SKV

ORDER GRANTING IN PART PETITION FOR HABEAS CORPUS

Petitioner Said Mohammad Tanai ("Petitioner") is a native and citizen of Afghanistan who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 6 at 2. Through counsel, he filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the constitutionality of his ongoing detention, which began over one year ago on September 16, 2025. *Id.* at 3. He seeks immediate release from custody and related relief. *Id.* at 26.

The Petition is verified by Petitioner's attorney. *Id.* at 27. Respondents filed a return, Dkt. 9, together with declarations from Deportation Officer Freite Subero, Dkt. 11,[1] and Special

[1] Declaration of Freite Subero ("Subero Decl."). Dkt. 11.

Assistant U.S. Attorney Barbara Andrade, Dkt. 10.[2] The latter attests to the authenticity of attached exhibits from Petitioner's A-file. Petitioner filed a traverse in reply. Dkt. 12. Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition, Dkt. 1, for the reasons set forth below.

## I. BACKGROUND

Petitioner first entered the United States on September 7, 2021, in connection with Operation Allies Refuge. Dkt. 10-2 at 3 (Form I-213). He became a lawful permanent resident on November 30, 2023. Dkt. 10-1 at 2 (Notice to Appear). On April 8, 2025, he was convicted of Assault with Intent to Commit Sex Abuse. *Id.*; Dkt. 10-4 at 2 (Criminal Judgment). On July 21, 2025, he was charged via Notice to Appear with removability under § 237(a)(2)(A)(i) of the Immigration and Nationality Act ("INA")[3] because he had been convicted of a crime involving moral turpitude within five years after admission. Dkt. 10-1 at 2 (Notice to Appear). ICE took him into custody on July 21, 2025, to be held pending his removal proceedings. Dkt. 10-2 at 3-4 (Form I-213). In removal proceedings initiated by the Department of Homeland Security ("DHS"), an Immigration Judge ("IJ") conducted a hearing on August 19, 2025, during which the IJ determined that DHS had proven Petitioner's removability by clear and convincing evidence and denied him bond, finding him a danger to the community. Subero Decl., ¶¶ 9-10. After finding Petitioner had abandoned any application for relief from removal, the IJ ordered him removed to Afghanistan on September 16, 2025. Dkt.10-5 at 2 (IJ Order); Subero Decl., ¶ 12. He waived his right to appeal. Dkt. 10-5 at 3 (IJ Order). He remains in custody to this date. Dkt. 6 at 3.

///

---

[2] Declaration of Barbara Andrade ("Andrade Decl."). Dkt. 10.
[3] 8 U.S.C.§ 1227(a)(2)(A)(i).

The ICE Office of Enforcement and Removal Operations ("ERO") began working to obtain a transportation letter from the Afghan government in September 2025. Subero Decl., ¶ 13. Although ERO has been unable to secure the Afghan travel document, ERO has conducted several post-order custody reviews, each time recommending that Petitioner remain detained pending his removal. *Id.*, ¶¶ 15-18. ERO "is now considering third country removal options while the transportation letter remains pending." *Id.*, ¶ 19.

Petitioner asserts four grounds for habeas relief. First, he argues that his prolonged and ongoing detention without reasonably foreseeable removal to his native country, Afghanistan, is unconstitutional. Dkt. 6 at 21 (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)). Second, he argues that any future redetention violates his rights to procedural due process under the Fifth Amendment. *Id.* at 22. Third, he argues that the Fifth Amendment, INA, and Convention Against Torture ("CAT") and implementing regulations require that he be provided notice and an opportunity to respond before any attempt to remove him to a third country. *Id.* at 22-23. Fourth, he argues that the Fifth and Eighth Amendments prevent his removal to a third country, to the extent that Respondents' third-country removal policy is punitive as implemented. *Id.* at 24-25; *see also* Dkt. 12 at 10 (citing cases discussing punitive third-country removal).

Petitioner seeks immediate release. Dkt. 1 at 4. He also seeks three forms of injunctive relief: (1) an order preventing his redetention absent a showing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community, based on changed circumstances after his most recent release by ICE; (2) an order preventing removal to a third country without notice and meaningful opportunity to respond in reopened removal proceedings; and (3) an order barring removal to any third country where he is likely to face imprisonment or harm. Dkt. 6 at 26-27.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas*, 533 U.S. at 687. A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

The INA expressly permits detention of noncitizens who were admitted to the United States but subsequently ordered removed during immigration proceedings. 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Section 1231(a) governs the detention and release of noncitizens such as Petitioner who have been ordered removed, and it provides that DHS is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. § 1231(a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including those who are removable under § 1227(a)(2), or to release them on supervision. 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. *Id.* at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut

that showing." *Id*. If the government is unable to meet its burden, then the noncitizen must be released from detention. *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018). A noncitizen may be returned to custody under certain circumstances, and on notice to the noncitizen. 8 C.F.R § 241.13(i).

## III. DISCUSSION

### A. Release from Indefinite Detention

Petitioner has been detained for approximately 13 months. Dkt. 6 at 4. Petitioner argues that under the framework of *Zadvydas*, 533 U.S. at 699, his removal is not reasonably foreseeable and his detention has become unreasonable in violation of 8 U.S.C. § 1231(a). *Id.* He asserts that ICE has obtained no travel documents for him and "Afghanistan is in the middle of a civil war, making his removal to that country unlikely." *Id.* at 7.

Respondents acknowledge that the IJ's removal order became final as of the date of its issuance on September 16, 2025, and that "the presumptively reasonable six-month removal period has lapsed in the instant case." Dkt. 9 at 7. On these facts, the Court finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The burden therefore shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Respondents recite the law respecting pre-removal detention, but they point to no evidence that Petitioner's removal to Afghanistan is likely in the reasonably foreseeable future. *See* Dkt. 9 at 2-3, 6 ("ICE has been unable to effectuate Petitioner's removal to Afghanistan, despite repeated efforts."). The Court observes as well that Officer Subero's declaration contains averments regarding periodic status checks and options for obtaining travel documents from

Afghanistan, but no details on how the process is likely to function in Petitioner's case. *See* Dkt. 11, ¶¶ 13-19.

"Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) (citations omitted); *Khan v. Blanche*, 2:26-CV-02629-TLF, 2026 WL 2445148, at *3 (W.D. Wash. Aug. 20, 2026) (discussing prospect of removal to Afghanistan). Officer Subero's generalized averments regarding the removal process to Afghanistan are insufficient to satisfy Respondents' burden under *Zadvydas*. Accordingly, Petitioner is entitled to release because his indefinite detention violates 8 U.S.C. § 1231(a). *See, e.g.*, *Yuksek v. Bondi*, 2:26-cv-2555-DGE-GJL, 2026 WL 60364, at *4 (W.D. Wash. Jan. 8, 2026).

**B. Injunctive Relief**

Although they do not offer evidence supporting Petitioner's continued detention pending removal, Respondents do argue that Petitioner fails to demonstrate entitlement to permanent injunctive relief. Dkt. 9 at 7.

An injunction is appropriate when a litigant demonstrates that "(1) it is likely to suffer irreparable injury that cannot be redressed by an award of damages; (2) that 'considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted'; and (3) 'that the public interest would not be disserved by a permanent injunction.'" *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

///

*1. Future Redetention*

Petitioner seeks an order preventing his redetention absent a showing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community, based on changed circumstances after his most recent release by ICE. Dkt. 6 at 4. This request appears to be premised on the notion that Respondents would violate his procedural due process rights if they were to redetain him. *Id.* at 8 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333–34 (1976)). In the Prayer for Relief, Petitioner also requests an order prohibiting Respondents from redetaining him without first obtaining valid travel documents to Afghanistan and offering him the option to self-remove. *Id.* at 26.

Although Petitioner directs the Court to a number of recent decisions in which courts have issued injunctive relief barring redetention absent hearing before a neutral decisionmaker, Petitioner provides no support for the proposition that he is likely to be unlawfully redetained, other than reference to news reports he interprets as showing a significant likelihood of unlawful detention of noncitizens generally. *Id.* at 22. In other words, he relies on the aggregated circumstances of noncitizens like him to show an individualized risk of future harm. Similarly, Petitioner provides no evidentiary, statutory, or regulatory support for the additional travel-related safeguards he proposes, which seem aimed at ensuring that he will be redetained only when his removal is truly imminent.

The Court recognizes the logic behind Petitioner's argument. Nevertheless, Petitioner's factual development for his request as it relates to his individual risk of being unlawfully redetained is relatively undeveloped and conclusory, and the request will be denied on that basis. *See Khan*, 2026 WL 2445148 at *4 (denying similar request for injunctive relief).

///

*2. Third Country Removal*

Finally, Petitioner challenges the constitutionality of ICE's current third-country removal policy and seeks two forms of injunctive relief. *See* Dkt. 6 at 24-27. Petitioner requests that this Court: (1) order that Respondents may not seek to remove him to a third country absent notice and meaningful opportunity to respond in reopened removal proceedings; and (2) order that Respondents may not remove him to any third country "where he is likely to face imprisonment or harm." *Id.* at 4.

Petitioner first argues that, prior to any third-country removal, he should be afforded notice and a meaningful opportunity to respond to the government's proposed action. More specifically, he argues that the "Fifth Amendment, the INA, the CAT, and implementing regulations mandate meaningful notice and opportunity to respond to any attempt to remove Petitioner to a third country in reopened removal proceedings." *Id.* at 22. Despite these constitutional and statutory safeguards, he asserts that ICE's current third-country removal policy violates due process and relevant statutes and regulations because an ICE policy memo issued on July 9, 2025, allows a noncitizen to be removed to a country not named in the noncitizen's removal order without notice if certain diplomatic assurances have been received that individuals removed to that country will not be persecuted or tortured.[4] *Id.* at 17, 24.

Petitioner offers the ICE policy memorandum as evidence that Respondents will disregard statutory safeguards that provide due process to challenge a third country removal. He buttresses this evidence with accounts of unannounced, precipitous third country removals drawn from legal proceedings and media coverage. *Id.* at 17-20. Petitioner does not, however, offer any challenge to the process used by the Government in the context of his individual

[4] This Court has taken notice of the contents of the July 9, 2025, memorandum and provided a detailed overview. *Nguyen*, 796 F. Supp. 3d at 716.

circumstances, other than asserting that removal to a country of his choice—Afghanistan or Jordan—is unlikely because of the delay thus far. *Id.* at 23.

In response, Respondents assert that "Petitioner has failed to demonstrate a sufficient likelihood of removal to any third country wherein he would face likely imprisonment or other punishment upon arrival" and that a "'mere possibility' does not entitle him to permanent injunctive relief." Dkt. 9 at 7 (quoting a *Torres v. Hermosillo*, 2:25-CV-02687-LK, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026)). Officer Subero also attests that ERO has not yet identified a "third country which will accept Petitioner," but on doing so, it "will provide Petitioner with written notice and the opportunity to claim fear as it relates to the third country . . . ." Dkt. 11, ¶ 21.

A number of courts in this district have addressed challenges to ICE's current third-country removal policy and have concluded that implementation of the policy may violate due process. *See, e.g., Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1200-01 (W.D. Wash. 2025); *Abubaka v. Bondi*, 2:25-cv-1889-RSL, 2025 WL 3204369, at *7 (W.D. Wash. Nov. 17, 2025); *Nguyen*, 796 F. Supp. at 703. However, on the facts before the Court, Petitioner has not made an individualized showing that he is likely to face removal to a third country in a manner that will violate his due process rights. Accordingly, the request for injunctive relief as regards third-country removal will be DENIED.

Nothing from this Court's Order prevents Petitioner from seeking relief in the future, should he deem it necessary.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the habeas petition, Dkt. 6, and ORDERS that, pursuant to *Zadvydas v. Davis*, Petitioner shall be RELEASED from immigration

detention within 24 hours on conditions consistent with federal law and regulations. Respondents shall file a notice with the Court within 48 hours that Petitioner has been released. Petitioner's requests for injunctive relief are DENIED without prejudice. Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 9th day of October, 2026.

S. KATE VAUGHAN
United States Magistrate Judge